IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ISABEL RODRIGUEZ,

    Plaintiff,

v.                                                      Civ. No. 18-387 KK/LF

WALMART INC.; WAL-MART
ASSOCIATES, INC.; ASHLEY K.
PITTS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff Isabel Rodriguez's Motion to Remand* (Doc. 5) filed April 27, 2018. Defendants filed a *Response to Plaintiff's Motion to Remand* on May 17, 2018. (Doc. 14.) *Plaintiff Isabel Rodriguez's Reply to Defendants' Response in Opposition to Her Motion to Remand* (Doc. 15) was filed on May 30, 2018. The Court has considered the parties submissions, the record, and the relevant law. For the reasons that follow, the Court concludes that Plaintiff's Motion to Remand is well taken and shall be **GRANTED**.

**I.    Background**

This lawsuit arises from an incident in which Plaintiff Isabel Rodriguez was injured while attempting to access an electric shopping cart at a Walmart store in Espanola, New Mexico. (Doc. 1-1 at 3-5.) Defendant Ashley Pitts was the assistant manager of the Walmart store, and one of the most (if not the most) senior management personnel on duty at the time of Plaintiff's injury. (Doc. 1-1 at 2-3.) Ms. Pitts is a resident (and, the Court presumes, is a citizen of)[1] New

---

[1] "For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state. And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (citation omitted). While Plaintiff's Complaint

1

Mexico. (Doc. 1 at 4; Doc. 1-1 at 2.) Plaintiff is a resident and a citizen of the State of New Mexico. (Doc. 1-1 at 1.) The corporate Defendants are citizens of Delaware and Arkansas. (Doc. 1 at 4-5.)

According to Plaintiff's Complaint, the circumstances surrounding her injury were the following. On July 24, 2017, Plaintiff parked her car in a "handicap parking" area near the entrance of the Walmart. (Doc. 1-1 at 3.) Plaintiff, who has problems breathing and who walks with a cane, uses an electric shopping cart. (Doc. 1-1 at 3.) Plaintiff looked for an electric shopping cart outside of the store, but she did not see one. (Doc. 1-1 at 3.) Plaintiff proceeded to the store's front vestibule where, again, she did not find an electric shopping cart. (Doc. 1-1 at 3.) Plaintiff proceeded to the main front-end lobby of the store where she spotted a single electric shopping cart plugged into a wall outlet. (Doc. 1-1 at 3.) As she was walking toward this cart, Plaintiff tripped over an unpainted concrete barrier (or "berm"). (Doc. 1-1 at 3-4.) Plaintiff fell to the concrete floor, injuring her skull, face, and shoulder. (Doc. 1-1 at 3-4.) The injuries to her caused her to bleed profusely from her forehead. (Doc. 1-1 at 4.) As Plaintiff lay on the floor of the Walmart store no one came to her aid. (Doc. 1-1 at 4) She called her grand-son-in-law to assist her, and he arrived five minutes later. (Doc. 1-1 at 4-5.)

Two unnamed Walmart employees stood nearby looking at Plaintiff, but they did not assist her until her grand-son-in-law asked them for paper towels to stop the flow of blood from Plaintiff's head. (Doc. 1-1 at 5.) When they were asked, however, the employees stated that they had called 911. (Doc. 1-1 at 5.) After Plaintiff was transported to the hospital in an ambulance, Ms. Pitts instructed the two male employees to "pull the carts forward" along the berm. (Doc. 1-1 at 5.)

---

addresses Ms. Pitt's "residence" only, in considering Plaintiff's Motion to Remand, the Court assumes that Ms. Pitts is domiciled in New Mexico.

The berm's function was to serve as a gutter and a guide for manual shopping carts used inside the store. (Doc. 1-1 at 4.) Plaintiff alleges that the concrete berm over which she tripped "was an unreasonably dangerous condition of the premises" because: it was the same color and texture of the floor, which made it indistinguishable from the floor; there were no markings on the floor or nearby signs to alert customers to the tripping hazard that the berm created; the berm was not painted; there were no barriers or other devices that would prevent customers from walking near or across the berm; and shopping carts were not pulled up along the length of the berm, which allowed the berm to be an open tripping hazard. (Doc. 1-1 at 4.)

Based on the foregoing Plaintiff filed the present lawsuit claiming, in Count I, that Walmart and Walmart Associates negligently created or caused a dangerous condition to exist on their premises; claiming, in Count II, that Ms. Pitts, as the person in control of the configuration of store equipment in the front-end lobby on the day in question was negligent in her duty to safeguard the premises for public use; and claiming, in Count III that Walmart and Walmart associates were negligent in training Ms. Pitts. (Doc. 1-1 at 6-8.) Plaintiff filed her Complaint in State of New Mexico, First Judicial District Court, County of Rio Arriba. (Doc. 1-1 at 1.)

Defendants filed a notice of removal alleging, in relevant part, that Plaintiff had fraudulently joined Ms. Pitts to this action to avoid diversity jurisdiction. (Doc. 1 at 3.) Defendants' fraudulent joinder argument is premised on the notion that Count II against Ms. Pitts is not actionable under New Mexico tort law. (Doc. 1 at 3-4.)

In the Motion presently before the Court, Plaintiff argues that Defendants cannot carry the requisite "heavy burden" of establishing that Ms. Pitts was fraudulently joined. (Doc. 5 at 6.) Plaintiff argues, further, that Defendants lacked an objectively reasonable basis for removing this

matter and, as such, Defendants should be required to reimburse her for the fees and costs incurred as a result of the removal. (Doc. 5 at 9.)

For the reasons that follow, the Court concludes that Defendants have not demonstrated that Ms. Pitts was fraudulently joined. Because the Court concludes, further, that Defendants did not lack an objectively reasonable basis for arguing that Plaintiff's claim against Ms. Pitts constituted fraudulent joinder, the Court determines that Plaintiff should bear the reasonable costs and fees that she incurred as a result of the removal.

## II.   Analysis

### A.   Overview of the Law of Fraudulent Joinder

"In order to invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.[2] Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013) (citation omitted). In determining whether there is complete diversity between the adverse parties, the Court must disregard parties who have been fraudulently joined. *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (holding that a non-diverse, fraudulently joined party did not defeat removal jurisdiction).

A claim of fraudulent joinder must be pled with particularity and it must be "proven with complete certainty" "upon undisputed evidence" such that it is "subject to summary determination[.]"[3] *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir.

---

[2] Plaintiff concedes that the amount-in-controversy requirement is satisfied here. (Doc. 5 at 2.)

[3] Defendants cite *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) for the proposition stated therein that "defendants seeking to remove must prove jurisdictional facts by a preponderance of the evidence." (Doc. 14 at 3.) *Frederick*, which does not address the standard relevant to a claim of fraudulent joinder, does not contravene *Smoot* in regard to the standard that informs the Court's analysis of Plaintiff's Motion to Remand.

1967); James WM. Moore, Moore's Federal Practice § 102.21[5][a] (3d ed. 2018) ([A] claim [of fraudulent joinder] must be pled with particularity and supported by clear and convincing evidence."). "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (alteration omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* "This standard is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano v. Allstate Indem.*, 211 F.3d 1278, *2 (10th Cir. 2000) (unpublished) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-53 (3d Cir.1992) ("A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."); *see Dutcher*, 733 F.3d at 989 (stating that the fact that the defendants had not proven fraudulent joinder did not mean that the plaintiffs had stated a valid claim against the non-diverse parties). The Court's "review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Moore, *supra*.

### B. Relevant Principles of New Mexico Agency Law

In New Mexico, "the liability of an employee or agent for injuries caused by dangerous conditions on occupied premises is directly related to actual control over the premises." *Klopp v. Wackenhut Corp.*, 824 P.2d 293, 300–01 (N.M. 1992). This principle of law derives from the Restatement (Second) of Agency § 355 (1957), which provides that

5

> [a]n agent who has the custody of land or chattels and who should realize that there is an undue risk that their condition will cause harm to the person, land, or chattels of others is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take.

*Klopp*, 824 P.2d at 301. "If an agent has only a limited control over land or chattels, he is subject to liability only to the extent that he is authorized to exercise such control." *Id.* (quoting the Restatement (Second) of Agency § 355 cmt. (b)). Thus, an employee who has "general oversight of a building, but who is not authorized to cure defects in it, is under no liability to third persons unless, by his conduct he causes them to be in it vicinity." Restatement (Second) of Agency § 355 cmt. (b). If, however, an employee "aids in creating a situation in which the thing over which he has partial control causes harm, he is subject to liability for such harm." *Id.*

An employee's liability for a dangerous condition on her employer's premises which is governed by the foregoing principles of agency is legally distinct from the general duty of ordinary care imposed by the law of negligence. *Klopp*, 824 P.2d at 300-01 ("The tort liability of an employee or agent for an omission is determined by the law of negligence" whereas "the liability of an employee or agent for injuries caused by dangerous conditions on occupied premises is directly related to actual control over the premises."); *see Bober v. New Mexico State Fair*, 808 P.2d 614, 620 (N.M. 1991) (stating that pursuant to the law of negligence, "[e]very person has a duty to exercise ordinary care for the safety of others").

C. **Defendants Have Not Proven That Ms. Pitts was Fraudulently Joined**

In the Complaint Plaintiff alleges that Ms. Pitts, as the person in control of the Walmart premises on the day in question, was authorized to take reasonable precautions to make the premises safe for Plaintiff's use vis a vis the "configuration of store equipment in the front-end lobby" of the store. (Doc. 1-1 at 7.) In that regard, Plaintiff alleges that there were no electric

shopping carts outside of the store or in the store vestibule. (Doc. 1-1 at 3.) Thus, Plaintiff who requires special parking accommodations and who walks with a cane, was forced to make her way into the store's lobby in search of an electric shopping cart. (Doc. 1-1 at 3.) The only electric shopping cart available was plugged into the wall. (Doc. 1-1 at 3.) There were no shopping carts along the concrete berm that functions as a gutter and a guide for manual shopping carts inside the store which, considering the design and color of the berm, allegedly created a tripping hazard. (Doc. 1-1 at 4.) Crossing the berm was the most direct route to the electric shopping cart that was positioned along the wall. (Doc. 1-1 at 3.) After Plaintiff's injury, Ms. Pitts instructed her subordinate employees to "pull the carts forward" along the berm. (Doc. 1-1 at 5.)

The sworn declaration of Nick Rodriguez, the manager of the Walmart store at which Plaintiff was injured is also before the Court. (Doc. 14-1.) In his declaration, Mr. Rodriguez addressed the policies and procedures governing Walmart's assistant managers. (Doc. 14-1 at 1.) According to Mr. Rodriguez, an assistant manager would have no role in physically placing or directing the placement of installed floor fixtures, such as concrete berms on the store premises; and they cannot place or control the placement of floor fixtures; assistant managers do, however, have "very minimal" control over the storage or placement of shopping carts within the store. (Doc. 14-1 at 1-2.)

At this stage of the proceedings, the Court does not consider the merits of Plaintiff's claim against Ms. Pitts or the degree of likelihood that Plaintiff will ultimately prevail in that claim. *Montano*, 211 F.3d at *2; *Dutcher*, 733 F.3d at 989. Instead, the Court's inquiry is limited to whether Plaintiff's claim is "so wholly insubstantial and frivolous" that Plaintiff could not establish a cause of action against Ms. Pitts in state court. *Batoff*, 977 F.2d at 851-53; *Dutcher*,

733 F.3d at 988. The facts of this case as submitted to the Court via Plaintiff's Complaint and Mr. Rodriguez's declaration and the relevant principles of New Mexico law, viewed in the light most favorable to Plaintiff, do not permit a summary determination that Plaintiff's claim against Ms. Pitts is wholly insubstantial and frivolous. *See Dutcher*, 733 F.3d at 988 (requiring the Court to resolve all factual and legal issues in favor of the plaintiff in analyzing a fraudulent joinder claim); *Smoot*, 378 F.2d at 882 (stating that a claim of fraudulent joinder must be proven with such certainty that it is subject to summary determination).

To that end, the Court observes that Ms. Pitts had some control over the location of shopping carts within the Walmart store. (Doc. 14-1 at 1-2.) In particular, she had the authority to direct her subordinate employees to place shopping carts along the berm which, by design, was intended to serve as a gutter and a guide for manual shopping carts. (Doc. 1-1 at 4-5.) In New Mexico, the degree to which Ms. Pitts was authorized to exercise control over the placement of shopping carts along the berm correlates to the degree to which she is subject to liability for her alleged failure to use care to take reasonable precautions against the risk that the absence of shopping carts along the berm would cause harm to Plaintiff. *Klopp*, 824 P.2d at 301; Restatement (Second) of Agency § 355. Thus, under New Mexico law, Plaintiff is entitled to pursue a claim against Ms. Pitts on a theory that Ms. Pitts aided in creating a tripping hazard by failing to use care in exercising her authority over the placement of the shopping carts along the berm, which hazard led to Plaintiff's harm. Restatement (Second) of Agency § 355 cmt. (b). Because Plaintiff's theory of liability against Ms. Pitts is potentially viable under New Mexico law, this matter shall be remanded to the state court in which it was originally filed.

Defendants' arguments to the contrary are not persuasive. Defendants devote a substantial portion of their briefing to issues that are ancillary or unrelated to Plaintiff's claim against Ms.

Pitts. For example, Defendants argue that Ms. Pitts cannot be held liable for circumstances that were wholly out of her control—such as the design and construction of the berm or other floor fixtures. (Doc. 14 at 10.) They argue, further, that Plaintiff cannot reasonably be likened to a subordinate employee over whom Ms. Pitts, in an exercise of supervisory authority, "ordered to walk toward the area where the carts were and to unplug the electric cart[.]" (Doc. 14 at 6-7.) And they argue that Ms. Pitts "lacked true unrestricted authority over the shopping carts that would, for example, let her place shopping carts in the produce section of the store[.]" (Doc. 14 at 9.) Because Plaintiff's allegations do not suggest that she intends to proceed on any of the foregoing theories, the notion that they lack merit does not affect the Court's analysis. These arguments and the authorities that Defendants have submitted in support of them do not warrant the Court's further consideration.

### III. Plaintiff's Motion for Costs and Fees Pursuant to 28 U.S.C. 1447 Shall be Denied

Plaintiff argues that the Court should award her the fees and costs that she incurred as a result of the removal of this matter to this Court. (Doc. 5 at 9.) Pursuant to 28 U.S.C. Section 1447 "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether to award just costs, expenses, and attorney fees under Section 1447 is left to the Court's discretion. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). In exercising this discretion, courts "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140. Thus, "the reasonableness of the removal" should drive the inquiry and a court should

award costs and fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

Defendants removed this matter on the ground that Ms. Pitts had been fraudulently joined for the purpose of avoiding diversity jurisdiction. (Doc. 1 at 3.) As discussed earlier, a claim of fraudulent joinder must be pled with particularity and it must be "proven with complete certainty" "upon undisputed evidence" such that it is "subject to summary determination[.]" *Smoot*, 378 F.2d at 882; James WM. Moore, Moore's Federal Practice § 102.21[5][a] (3d ed. 2018) ([A] claim [of fraudulent joinder] must be pled with particularity and supported by clear and convincing evidence."). Establishing fraudulent joinder imposes a "heavy burden" on the removing party. *Dutcher*, 733 F.3d at 988. Although Defendants have not carried the heavy burden of establishing fraudulent joinder in this matter, the Court is not persuaded that Defendants sought removal in this case to delay the proceedings or for any improper purpose.

Although Plaintiff may pursue a claim against Ms. Pitts under New Mexico law as discussed earlier in this Opinion, her complaint did not plead a claim against Ms. Pitts with such clarity and precision that the theory of liability against Ms. Pitts was readily discernable. To that end, the Court notes that the heading of the claim against Ms. Pitts suggests that Plaintiff sought to hold Ms. Pitts liable for "negligence" without clearly indicating that she was proceeding upon the nuanced agency theory discussed earlier; that the allegations in the complaint identify several issues with the premises and with the berm—only one of which, the placement of the shopping carts, was reasonably within Ms. Pitts' authority as the assistant store manager; and that the allegations pertaining directly to Ms. Pitts could reasonably be construed as an attempt to hold her liable for aspects of the design and construction of the premises that were clearly not within her control. To the extent that Plaintiff wished to avoid removal, the Complaint could have been

more carefully drafted, with sufficient specificity and clarity to alert Defendants as to the precise nature of her claim against Ms. Pitts.

In sum, the Court is not persuaded that Defendants lacked an objectively reasonable basis for removal on the ground of fraudulent joinder. Under these circumstances, Defendant cannot fairly be expected to bear the costs incurred by Plaintiff arising from Defendants' decision to remove this matter to federal court. As such, it is reasonable and appropriate for Plaintiff to bear the fees and costs associated with removal.

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED** that:

(1) This case is **REMANDED** to the State of New Mexico, County of Rio Arriba, First Judicial District Court; and

(2) Each party shall bear its own costs and fees associated with the removal of this matter.

**IT IS SO ORDERED**.

_____
**Kirtan Khalsa**
**United States Magistrate Judge**
**Presiding by Consent**